And its case is number 2010-14-13. The Ad Hoc Shrimp Trade Action Committee against the United States and others. Mr. Ricard. Good morning. May it please the Court, I am Nathaniel Ricard. I am counsel to the Ad Hoc Shrimp Trade Action Committee. In broad terms, ASTAC's challenge challenges two aspects of Commerce's final results of the Administrator Review. One part of the action challenges the selection of companies that were individually investigated. The other challenges how Commerce defined the specific sales that would be subject to the review for two different respondents. On the first issue, the relevant question before the agency was, which exporters will be individually examined? Those selected for individual review determined the dumping margins assigned to the vast majority of exporters not selected for individual review in this proceeding. I understand that you're making two arguments in this capacity. One has to do with volume versus sampling, right? That's correct. Well, the statute explicitly says that Commerce can use either method, and Commerce has the discretion to choose. So on the merits, if you overcome the exhaustion hurdle, which I know you haven't gotten to yet, if we get to the merits, how can I say Commerce's choice is an abuse of discretion to choose to pick the suppliers by volume rather than sampling? Well, we agree that the Department has discretion under the statute to choose whether to use sampling or to use the largest exporters. Our claim relates to the way in which they went about the decision to predetermine the determination to choose by largest volume prior to any comments. Well, they don't have to see comments. They have the discretion to go either way, right? They don't have to solicit comments on whether to sample or go by largest volume. Not under the statute, but under practice, if the practice of the agency is to solicit comments and to keep open the option of whether or not to use sampling or to use the largest volume, then in this proceeding, to do something distinct from all other admin reviews that the agency has underwent is arbitrary. The second issue that we addressed, the relevant question before the agency, was what sales will the agency review to determine and to what extent the sales were made in the United States at less than fair value during the review period. Our company-specific challenges, which are at the back of our brief involving TIEMEI and TIE-Union, both relate to this question. And at issue here is Commerce's definition of the reportable universe of CEP sales for TIE-Union and TIEMEI. For CEP sales, Commerce has defined the reportable universe as sales with sales dates as opposed to entry dates during the period of review. The CEP sales that were reported by TIEMEI ended up being over-inclusive and included CEP sales with sales that preceded the POR. The CEP sales reported by TIE-Union were under-inclusive and did not include all sales with sales dates during the POR. For TIEMEI, as Commerce explained, the additional CEP sales reported by TIEMEI were sales that had shipment dates prior to the period of review, but invoice dates within the period of review. And in this case, Commerce has determined the sales date as the earlier between the shipment date or the invoice date. Although TIEMEI argued that each of these extra sales reported had not been part of the previous administrative review, the company did not claim to be reporting all sales that had not been included in the previous POR. Instead, TIEMEI reported a subset of those sales, just those with invoice dates that preceded the period of review. Commerce ultimately included one of those extra sales in its review. Commerce reasoned that because the merchandise had entered the U.S. during the period of review, this was the first time that the sale could have been reviewed. However, under that logic, Commerce should have requested that TIEMEI provide information relating to all sales made by that company that entered the U.S. during the POR but had not been included in the previous administrative review. Do you have evidence there are other sales that were improperly excluded? We do not. Commerce never asked them to include other sales. Right, but you're here asking us to tell Commerce that by including this one sale, it should have then cast a broader net, but you've got no evidence to suggest that that error by Commerce was in any way harmless because you've got no evidence that there were, in fact, any other sales that would fall within that category. What we have, as the way that this case was raised before, you had TIEMEI reporting four extra sales, of which it says the four sales should be included because their invoice dates were during the POR. We argued that because the entry dates, or because the sales dates had all preceded the POR, that they should all have been excluded. Commerce decides that of one of those four sales, because it happens to have an entry date that's during this POR, that it ought to include that sale, and then says in arguments to the court below that this is appropriate because its statutory mandate is to determine a margin for all entries during the period of review. But Commerce never asks, throughout the investigation and review proceeding, whether or not TIEMEI has reported all sales with entry dates during the POR. And so it simply takes one of four that TIEMEI volunteers to provide. Well, the rest of those sales with the entry dates would likely have been encapsulated by the earlier review, wouldn't they? The earlier review, because it would have been based on their invoice or their shift date. And so this was a unique situation where you have one sale that wasn't, if you didn't include it here, it wasn't included in the earlier one. It's not included in this one. It's sort of, you know, not included anywhere. And why isn't that a discretionary matter for Commerce to say we've got this one errant sale, and let's go ahead and include it? Because we can't tell from the record in the proceeding whether or not that is the only sale that meets that particular circumstance. Again, what TIEMEI individually reported and volunteered were four sales that had invoice dates during the POR. And so for three of those sales, the entry dates were previous to the POR. That's just what they volunteered. If what Commerce is trying to get to is to review all sales that they didn't, that had entered during this period of review, they didn't achieve it by just selecting this one particular sale. Instead, they said of the four sales that you have volunteered, we will choose one. And it was to the exclusion of any other class of sales that TIEMEI may have had that had entry dates during the POR but did not choose to report. Can we turn to your exhaustion issue? Sure. Is that okay? So the issue, as I understand it, is the argument in opposing your appeal related to choosing four, the four largest volume sellers, and also the argument related to sampling versus volume. That's correct. One of the primary arguments that opposing counsel has made is that you didn't exhaust your administrative remedies because you didn't put it in your case brief. You raised these arguments, but you didn't put them in your case brief. Can you address that? Right. That was the basis for the application of the exhaustion requirement in the court below. We believe that it would have been futile to have raised in our case brief that the way that the proceeding went forward, we had raised our issues, our substantive concerns regarding respondent selection in five separate filings to Commerce. Early in the proceeding, we had set out fully our arguments against respondent selection on both of those issues, that Commerce issued both a memorandum that set out its reasoning for its respondent selection, and later, after an additional objection made by ASTAC, had issued a letter in August that said that its determination was final and that its reasoning had been fully set out in the memorandum. We've held that the futility exception is a narrow one. The mere fact that an adverse decision may have been likely does not excuse a party from a requirement that it exhausts administrative remedies. Right. In this case, we would say that it fits within the narrow exception because we had been told by the agency that the determination was final, that there was nowhere to go having briefed all of the issues beforehand. When did they say that? In the August letter, that they would not revisit the determination to select four respondents. Can you point me to that? Sure. It's 643-644 of the Joint Appendix. In the first paragraph, the final sentence, for the reasons explained below, we have determined that it is not appropriate to reconsider the number of companies required to respond to the full questionnaire. This doesn't say this is our final decision. I mean, Congress has final decisions and preliminary decisions, and they're very careful to clearly use those words when they apply. And you represented to us that it said it was final. I'm sorry. We interpret this to say that it was final. This was the final determination on the particular issue, and it could not be revisited at a later point. What about the sentence makes you think it can't be revisited? For reasons explained below, we've determined it's not appropriate to reconsider the number of companies. What makes you think that you think they'll never reconsider it so it can't be in the case brief? That's what you should take from that sentence. We took it because we had laid out our arguments and because the agency had said that its reasoning was laid out. I'm sorry. Later on in the 644 at the top, we note that our response selection methodology is set forth in July 19, 2007. Remember, I'm issuing each of these reviews. We took this to mean that that was the basis for a determination which ends up being final as to respondent selection. Is that in dispute? Whether or not this was a final determination, I don't know the answer to that. I mean, the basis is one, the basis for the ruling was that we did not include it in our case brief, and for that sole reason, the exhaustion remedy applied. You've got a regulation, and you've got our forestall decision, which are pretty big hurdles to overcome to establish a futility exception. There's actually a regulation that says explicitly even if you raise the issue beforehand, you still have to put it in your case brief. And in Coruscant, we all but entirely foreclosed the futility exception in light of that regulatory language and the reason behind it. So that's why I keyed in when you said they said it was final because that's the kind of language that maybe would have gotten you within that exception. If they said this is final, we will not, do not put it in your case brief. You know, if you have that level of clarity coming forward, then that's a different animal for futility purposes. But I'm struggling with the futility argument in light of Coruscant. Is there any distinction you want to point to between this case and Coruscant that would help me? I think that the distinction that we would draw is one of the way that these administrative proceedings go forward, that at some point there has to be a final determination made with respect to basic issues that you go forward with, things like respondent selection. If ultimately the decision of this court is that the futility exception doesn't apply or doesn't encompass something that's a sort of preliminary determination. I guess here's my question. You wanted them to just use the top two, not the top four, right? We wanted them to use as many as their resources would permit in a rational manner. But in this case, if they find that they have less resources than in previous reviews, it's not rational to then select more respondents. Wait a minute. I thought you argued you thought they should pick the top two, whereas they chose the top four. Right. They had chosen between two or three in previous proceedings. So if they selected three, that would have been in line with what they had done previously. Okay. And you wouldn't be here arguing if they had chosen three versus four. That's correct. Okay. Well, at the time, July 19th was when they sent out the questionnaires to the four. Well, they're not locked into taking all four of those and using them in the review just because they sent questionnaires, right? Correct. And so as of August 17th, they're starting to get back in these questionnaires. They're still not locked into using all four. It's like soliciting data. I might decide not to use all of it. So why not put it in the case brief since it's not as though they've already used it, it's set in stone, and it can't be pulled back out? This isn't like, you know, mixing up cake batter and, darn it, I threw the vanilla extract in, I can't get it back out. You know, this is a different situation. This is, here are all the ingredients lined up on the counter, and I can choose which ones to put in and not. That's correct. I mean, on that particular issue of three versus four, we challenged, obviously, I apologize if I narrowed it too far. We challenged both the choice of the largest methodology versus sampling, and once you use the largest methodology, they selected four as opposed to three or two. Now, the difference between what took place in August where we voiced our objections and set that up and then got a letter back in August saying that they had made their determination and what occurred at the very end of the process is they would have gone through all of that process. They would have collected all of that information. And they had engaged in verification with respect to one of the respondents. But does that still make it futile for you to put in the case brief? They've collected the information, but they haven't finalized their review yet. Just because you got the information doesn't mean you have to use it. That's, I guess, what I'm saying. I'm trying to figure out whether it's futile. Right. It certainly would have been futile with respect to whether or not you used sampling or the largest methodology because at that point you can't go back and do sampling and end up with either those two or three. Yes, I see. Well, let's hear from the other side. Mr. McCarthy. Thank you. Thank you, Your Honor. May it please the Court. The Department of Commerce and the Court of International Trade both acted well within their discretion here. With respect to the selection of respondents, just to back up to the merits for a second, Ad Hoc requested that the Department of Commerce conduct administrative reviews of 121 Thai companies. Now it came to the Court and is complaining that it individually reviewed four companies and it should have only reviewed two out of the 121 companies that Ad Hoc requested Commerce to review. We believe, as we noted in our brief, that they failed to exhaust administrative remedies on the respondent selection issue. Also, they had numerous opportunities before the Department of Commerce made its initial decision at A643 to rely upon for the four largest companies. There was a whole schedule for comment and Ad Hoc never raised the issue of number of respondents to individually review. Would it have been futile for them to put it in the case brief in light of this letter at A643, which says it is not appropriate to reconsider the number of companies required to respond to the full questionnaire? No, it wouldn't have been futile. In fact, the case brief regulation says that even if you've raised something before, you shall raise it in your case brief and, even more importantly, the Department of Commerce will address any comments. Okay, hold on. If we were to accept that regulatory language, it would make it seem like it was absolute and there exists no futility exception. Is that what you're advocating to us? Because I think that's foreclosed by Korrestahl, which allows a futility exception but then says how strict and limited it is. Well, exactly. Korrestahl notes how limited the futility exception is. Would you accept that it still exists? If there could be a fact pattern that falls into it, yes, there are cases where the court has found that it exists. This case is a mundane calculational issue where the Department of Commerce could have used only two respondents' data, as Ad Hoc is now requesting, instead of four. It could have just not used Tye Mays' and Tye Union's data, but it elected not to. It continued to do what it did in the preliminary results because nobody raised the issue in their case brief. If you look at Department of Commerce final determinations, you'll see in their decision memo there's issue number one, issue number two, issue number three, and these are each issues that are raised by interested parties in their case briefs. And the Department of Commerce here followed its regulation and issued a decision concerning each discrete issue raised by the parties to it. Right, but they raised that. I don't think that they're arguing with the fact that Commerce didn't address the largest volume versus the sampling or the four versus two in the final determination. I don't think anybody's disputing that. I think their argument is we're entitled to raise it on appeal because we raised it, it was fully vetted below, and we were told go away, we're not going to reconsider it, so it would have been futile to put it in our case brief. Well, as we noted below, before the Department of Commerce issued its August 17th letter, it actually came out with a schedule for comments, and the parties, interested parties, all filed comments on respondent selection and filed responsive comments on selection. And if you look at Ad Hoc's comments at page A348 to A356, and then it followed responsive comments if you look at page A366. And in those comments and responsive comments, Ad Hoc advocated only, exclusively, for use of a sampling methodology. It then raised its new argument, two versus four. Well, how is it supposed to know two versus four? Because prior to the government's choice of four, it couldn't have known the government was going to behave differently in this review than it had in previous reviews where you had only chosen three. So I imagine his argument and response might well be, well, wait a minute, we were never on notice beforehand that there were going to be four, so we wouldn't have raised that objection. Well, but if you look at Taiyi Mei, who was one of the extra two respondents, if you want to put it in Ad Hoc's view, Taiyi Mei asked Commerce to use no fewer than four respondents in its comments at the same time that Ad Hoc was commenting. And if you look at A378, Commerce discussed Taiyi Mei's request to use four, but Ad Hoc never responded to that request. So they had the opportunity even before Commerce issued its determination, its Respondent Selection Memorandum. So that was the first chance that Ad Hoc had to exhaust an explicit administrative remedy. Then, after Commerce made its Respondent Selection determination, Ad Hoc, as the trial court noted, had another opportunity, which was in its case brief if it had followed the regulation. Well, it had another opportunity, which is the August 17th letter, or what preceded the August 17th letter as well, right? Well, in— After you sent out those questionnaires to the four, that's when there could be no doubt they were clearly on notice that you were going to be soliciting information from four, and wouldn't that have been the most logical time to object to it? Well, they were on notice when Commerce issued its Respondent Selection Memo in response to everyone's comments. That would be at page A376. That's the July 19th decision memorandum, Selection of Respondents for Individual Review. And that's when they promptly sent you their objection to the four shortly thereafter. That's correct, but they could have objected to Tyee May's request before this date when the parties—when there was actually a schedule for comments and responsive comments that—where Ad Hoc had an opportunity. But this is what I find difficult to understand, is you're saying you want them to respond to something that you haven't actually said anything about. When you asked for comments, you didn't indicate to the world how many people you were considering taking data from, and yet you're faulting them for not commenting on the fact that you were going to take data from four people, but they had no way of knowing that at the time. Well, they had a way of knowing because Tyee May, one of the parties who wanted more respondents to be reviewed, asked Commerce in its comments. So Ad Hoc had a chance to respond to those comments before the agency made its decision. So there was an explicit opportunity there. How many people make comments in these sorts of situations? I'm just wondering if the fact that one person makes a comment automatically ought to be construed as putting someone on notice and therefore obliging them to respond at that point rather than later when the agency actually takes some action or makes some pronouncement with regard to its intent. Well, for administrative convenience for the agency, it would be chaos if the agency sets a schedule for parties to file comments and to file responsive comments and then reaches a decision on the issue and then all of a sudden receives a blizzard of unsolicited requests for reconsideration of its decision. That would be akin to an appellant or an appellee in this court filing a petition for rehearing and raising entirely new issues that were never addressed on the appeal. Again, just trying to understand the confines of the futility exception, one of the things that jumped out at me at Cora's stall in our decision that we wouldn't apply futility, there are two points in that opinion. We say one of them is that Commerce expressly said its decision was preliminary and that's why I was quite specific about wanting to see if the word final really did appear versus preliminary because in Cora's stall it says since Commerce dubbed a decision as a preliminary decision, it stands to reason that it would have been open on a case brief to reconsider that issue. Here, to the extent that you said we will not reconsider the issue, seems quite distinct from the Cora's stall facts. But Commerce never called it a final determination and if you look at the statute and the regulations, a final determination or final results is a statutory term under 19 U.S.C. 1675 where Commerce issues final results of an administrative review. And so when Commerce says final, as you noted earlier, it means final and there's a basis for the use of that term. Commerce doesn't take terms out of statutes and bandy them about. It uses the word final when it issues a final decision. Well, when it issues a final decision, there's no opportunity anymore for any kind of appeal to Commerce or consideration of four versus two or sampling versus following, right? At that point in time, the whole process is over and it's moving up the chain. That's correct. It moves up to the courts if a party chooses. So after final, they would have absolutely no opportunity to appeal the issue. They couldn't possibly raise it before you. It just doesn't seem consistent or compatible. I guess the other distinction, I just want to make sure I understand it because I don't follow your distinction in terms of Korrestal saying it was significant that Commerce noted this was preliminary. And that language in 643 seems pretty clear that you weren't going to reconsider. So I see a pretty big difference between Korrestal in this case. But on the other point that Korrestal raised, it pointed out that all of the arguments made on appeal were really so much different and more elaborated on and much more detailed, and it suggests that another reason why we want to favor exhaustion is to give Commerce an opportunity to consider those arguments. Would you say that the arguments made on appeal by a shrink-training company here are similar to Korrestal? Did they make new arguments on appeal that weren't presented to Commerce below such that exhaustion as a policy matter occurred? What they're raising now, they're only raising before the courts the use of four versus two argument. And the only place where they raised that issue was in their unsolicited post-decisional comments, the letters that they filed with Commerce after Commerce made its respondent selection. So we're, I mean, there's on the record below, Ad Hoc made these arguments to Commerce. They did not make these arguments when they were explicitly given the opportunity to do so, either by Commerce's implementation of a schedule early in the proceeding or pursuant to Commerce's regulation where it had another chance to preserve its arguments. Now, did you want to save some time for Mr. Connolly? Yes. Oh, yes, I took 12 minutes, and that's what I started with. He has three. Okay. If the Court has no further questions, we respect the request that it affirm. Okay. You have three minutes, although it looks like 13 seconds. Thank you, Your Honor. I won't take my three minutes. We're content to rest on the brief we have submitted and the brief of the government with respect to the Thai Union issue. I just want to make really one point. The Nippon Steel case is the case that establishes the standards for the application of adverse facts available. That case, of course, says that there is an objective test and a subjective test for applying AFA. The objective test is simply that there has to be a known obligation, and secondly, the subjective test requires a finding that a maximum effort to respond was not made. And this is an area which is squarely within the Commerce Department's expertise, trying to evaluate what we say is a very complicated factual situation. And here there is no evidence of Thai Union's intent to withhold information or disregard a known reporting obligation. The agency itself issued what it claimed were confusing instructions. I think that's a mild characterization. But in any event, we would rest on the fact that there simply is no evidence to support either a finding of the objective test or the subjective test. Thank you. Thank you, Mr. Cotton. Mr. Picard, do you have some rebuttal? Thank you. Just briefly, I'd like to build on something that Judge Moore asked about, which is why did we feel that that August letter was a final determination? I think you can hear a bit of it from the tension between the government's position that we were required to raise all these issues at a set time during the proceeding and that everything that we filed thereafter was post-decisional, that there had been a decision made that would not be revisited. What we are looking at then in future administrative reviews is compartmentalized pieces where we have to raise issues early on, lay those fully out in order to have them considered. And if we left it to the case brief, we would be told that we had not raised them early enough in the proceeding because there is a separate requirement of when you have to raise arguments during the proceeding with respect to particular issues of which the parties are not clear about entering into the proceeding. Thank you very much. Okay. Thank you, Mr. Picard. Thank you, Lawrence. See you, Mr. Cotton. Please take your new submission. All rise. Thank you. Now to perform this adjournment's formal reporting at 10 o'clock a.m.